(No. 13856.—Decree affirmed.)

The Consumers Company *et al.* Appellees, *vs.* The City
of Chicago *et al.* Appellants.

*Opinion filed June 22, 1921.*

1. Municipal corporations—*ordinance requiring motor trucks
of certain rated capacity to be equipped with fenders is void.* An
ordinance requiring motor trucks of a rated capacity of 1500 pounds
or more to be equipped with fenders must be held invalid as based
upon an arbitrary classification, and as delegating to administrative
officers of the city and to courts and juries the function of deter-
mining to whom it is applicable and whether in a given case a motor
truck is of 1500 pounds' capacity or more, where the evidence shows
there is no known standard for rating the capacity of motor trucks.

2. Same—*an ordinance uncertain in meaning is void.* An ordi-
nance will be declared void if it is indefinite and uncertain and its
precise meaning cannot be ascertained.

3. Constitutional law—*a classification must be based upon a
substantial difference.* Within certain bounds objects may be clas-
sified for the purpose of legislative control and legislation may be
adopted applicable only to such objects, but the classification must
be based upon some substantial difference which bears a proper
relation to the classification.

Appeal from the Circuit Court of Cook county; the
Hon. John P. McGoorty, Judge, presiding.

Samuel A. Ettelson, Corporation Counsel, (Leon
Hornstein, and Robert C. O'Connell, of counsel,) for
appellants.

Butz, von Ammon & Marx, Nathan S. Blumberg,
and Miller, Gorham, Wales & Noxon, for appellees.

Mr. Justice Farmer delivered the opinion of the court:

The Consumers Company and fifteen other corporations
and persons filed their bill in chancery against the city of
Chicago and certain of its officers to restrain the enforce-
ment of an ordinance requiring motor vehicles designed for
carrying freight and merchandise, of 1500 pounds' capac-

ity or more, to be equipped with a fender at the front end in such manner and of such design as to prevent injury to pedestrians.  After answer filed a temporary injunction was granted and the city prosecuted an appeal to the Appellate Court, and that court reversed the decree awarding the temporary writ.  The cause was then referred by the circuit court to a master in chancery to take the proofs and report the same together with his conclusions of law and fact.  During the taking of the testimony complainants by leave of court amended their bill and subsequently filed a supplemental bill.  On the showing made by the supplemental bill another order for a temporary injunction was entered by the court.  More than 1500 pages of testimony was heard by the master, who reported the same together with his conclusions, recommending that a decree be entered finding the ordinance invalid and perpetually enjoining defendants from enforcing it.  Exceptions of defendants to the report of the master were overruled and a decree entered granting the relief prayed in the bill.  As the bill, among other objections, attacked the ordinance as being in violation of section 2 of article 2 and section 22 of article 4 of the State constitution and of the fourteenth amendment to the Federal constitution, defendants have prosecuted an appeal direct to this court.

Among other issues made by the pleadings and contended for by appellees are, that the ordinance is void because (1) vague, uncertain and indefinite; (2) it delegates legislative functions to administrative officers of the city or to courts and juries; (3) it is repugnant to section 2 of article 2 and section 22 of article 4 of the State constitution and to the fourteenth amendment to the Federal constitution, in that it unlawfully discriminates against motor trucks of 1500 pounds' capacity or more in favor of trucks of less than 1500 pounds' capacity, passenger cars and various special types of motor vehicles and bears no reasonable relation to the object sought to be attained; (4) the Motor Vehicle

act of 1919 took from the city any power it possibly may have had to pass ordinances for the equipment of motor trucks, except those, possibly, used only for hire; (5) the right to require motor trucks to be equipped with fenders has never been delegated to the city, either expressly or by implication; (6) it is unreasonable because of its provisions as to tests, and imposes an unreasonable and harsh penalty; (7) it delegates to the inspection bureau legislative and discretionary power to approve changes in fenders without requiring tests.

The ordinance in question was passed in June, 1916, to go into effect January 1, 1917. A fender ordinance had been passed by the council previously but had never been enforced. February 19, 1917, the city council passed an order directing the chief of police to enforce the present ordinance, and appellees thereupon filed their bill for an injunction. The ordinance is lengthy, covering ten pages of the printed abstract. By the ordinance it is made unlawful for any person or corporation to use and operate on the streets, alleys and public places in the city any motor truck of 1500 pounds' capacity or more, which is defined to mean any motor-driven commercial vehicle designed and used to carry freight, goods, wares and merchandise, unless such motor truck is provided with a fender fastened at the front end so as to afford means of preventing injury "to the life or limb and promote the health and safety of pedestrians." The fender must conform to specifications provided and must be approved before it can be used. In order to secure approval fenders are required to be submitted for tests to the clerical, mechanical and inspection bureau. The character of the tests and efficiency markings are provided for in the ordinance. A fender that develops a certain degree of protective efficiency and conforms to the specifications is to be given a certificate of approval issued by the chief of police. Where satisfactory tests have been previously made, certificates may issue without further

tests. Manufacturers whose fenders are approved may attach to them name plates indicating such approval. A penalty is provided for the violation of the ordinance of not less than $25 nor more than $200, and each day's violation is made a separate and distinct offense.

Whether the grant of power by the Cities and Villages act implies authority to pass an ordinance requiring the equipment of motor vehicles with fenders, or whether, if such authority was granted, it was taken away by the Motor Vehicle act of 1919, we shall not here determine, as, in the view we take of the case, if such power existed in the city it was not lawfully exercised in the passage of this ordinance.

The proof shows no known standard exists for rating the capacity of motor trucks. They usually have a plate showing the manufacturer's rating of capacity. This is not determined by any known standard but depends on the arbitrary judgment, integrity and motive of the manufacturer and is subject to change at pleasure. A truck heretofore rated by the manufacturer at 1500 pounds or more may be hereafter rated at less than 1500 pounds. The proof shows that, as a matter of fact, the maximum capacity of trucks is frequently more than their rated capacity, but there is nothing to prevent the manufacturer from rating a truck in excess of its capacity, which is sometimes done. Also a truck rated at a certain capacity may be able to carry that load for a time but from use and loss of power may become incapable of carrying it. Many passenger cars are converted by someone other than the manufacturer into trucks for carrying merchandise by substituting a freight body for the passenger body. Such trucks have no rating, and a large per cent of them used in the city of Chicago habitually carry loads of more than 1500 pounds. In 1917 there were 13,000 freight-carrying trucks in use in the city. About 7700 were rated at 1500 pounds or more and about 1600 at less than 1500 pounds. There were 3700 converted

cars which had no rating, but many of them carried loads of more than 1500 pounds. A truck may safely carry 1500 pounds under favorable conditions but fail to do so under unfavorable conditions. Some trucks are of such size and build that all would judge them to have a carrying capacity of 1500 pounds, but there are many trucks the capacity of which cannot be determined from their size and appearance. Other illustrations might easily be given of the vagueness and indefiniteness of the ordinance and the difficulties in the way of its efficient and just enforcement. It seems apparent that the ordinance delegates to administrative officers of the city and to courts and juries the function of determining to whom it is applicable and whether in a given case a motor truck is one of 1500 pounds' capacity or more. *Ex parte Bell*, 32 Tex. Crim. 308; 40 A. S. R. 778.

If an ordinance is indefinite and uncertain and its precise meaning cannot be ascertained it will be declared void. (*City of Chicago* v. *Chicago and Northwestern Railway Co.* 275 Ill. 30; *Chicago, Indianapolis and Louisville Railway Co.* v. *Town of Salem,* 166 Ind. 71; McQuillin on Mun. Corp. sec. 651.) The object of the ordinance, as expressed by its terms, is "to prevent injury to the life or limb and promote the health and safety of pedestrians." It is made applicable only to motor trucks used for carrying freight which have a capacity of 1500 pounds or more. It is lawful, within certain bounds, to classify objects for the purpose of legislative control and adopt legislation applicable only to such objects, but the classification must be based upon some substantial difference which bears a proper relation to the classification. The proof abundantly shows there is no characteristic difference, so far as the object sought to be accomplished is concerned, between trucks with a capacity of 1500 pounds or more and the smaller motor trucks and passenger cars and the various types of special motor vehicles referred to in the evidence. In 1917 there were about 60,000 passenger cars in use in Chicago, not

·including motor busses. The weight of trucks carrying 1500 pounds or more furnishes no characteristic difference for the classification. The testimony shows that there were many hundreds of passenger cars in use in the city weighing, unloaded, from 4000 to 6000 pounds. Many of the large passenger cars are equipped with engine power equal to the large freight-carrying trucks, and it was proven that neither weight nor engine power afforded a reasonable basis for the classification. The master found,—and the testimony, including actual tests made, supported the finding,—that two cars of different weight running at the same rate of speed, having the same percentage of load bearing on the rear wheels, can be stopped in the same distance and time, but that the heavier cars run at less rate of speed or have a greater per cent of the load on the rear wheels, or both, and can be stopped more readily than lighter cars. A large mass of evidence of a technical or scientific nature was heard on that subject, from which it appeared that the danger of collision with pedestrians and the front end of passenger cars is at least as great as in the case of trucks. This is borne out by the statistics compiled from the records in the office of the coroner of Cook county. It was further proven that no one but examined and licensed drivers were permitted to drive trucks, while privately owned passenger cars may be, and are in many instances, driven by men and women, boys and girls, without any tested expertness.

Without further extending the discussion of this subject, it is sufficient to say no reasonable basis existed for the classification made by the ordinance; that it unreasonably discriminates between persons similarly situated and is in violation of the State and Federal constitutional provisions referred to. *People* v. *Kewanee Light and Power Co.* 262 Ill. 255; *People* v. *Weiner,* 271 id. 74; *People* v. *Schenck,* 257 id. 384; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* ·231 id. 302.

In our view it is unnecessary to refer to other questions raised and discussed in the briefs of counsel.

The decree of the circuit court is affirmed.

*Decree affirmed.*