**Russell J. CROUSE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 1644.

United States District Court
D. Delaware.
Dec. 15, 1955.

48

James M. Tunnell, Jr. (of Tunnell & Tunnell), Georgetown, Del., for plaintiff.

H. Newton White, Asst. U. S. Atty., Wilmington, Del., for defendant.

LEAHY, Chief Judge.

This is an action against the United States under the Federal Tort Claims Act.[1] Plaintiff, a resident of Chicago, sues here, where the act complained of occurred.[2] The case was tried to the court.[3]

1. The following are the facts: On the afternoon of October 15, 1953, plaintiff, Russell J. Crouse, was proceeding in a northerly direction in the State of Delaware on Route 13, a 4-lane dual highway separated by a grass plot, in a vehicle owned and operated by John C. Gardner. Also proceeding north was a United States Army convoy of trucks, approximately 25 feet apart, returning from army maneuvers. Staff Sgt. Lee H. Bilbrey, a member of the 602nd AAA Batt., occupied the lead position in a United States Army 1952 International 6 x 6 truck with a 90 millimeter gun and gun carrier in tow. The convoy was moving in the *right* lane of the northbound section. Approximately 150 to 175 yards south of the point where Wrangle Hill Road intersects Route 13, Sgt. Bilbrey, not observing in his rear view mirror any vehicle approaching in the left lane, signaled with his hand for a left turn and crossed a few feet to the left of the center line of the northbound section. At a point 25 to 75 yards from the intersection, he recrossed to the right of the center line in order to execute the turn more easily. Upon reaching the intersection Bilbrey proceeded to execute a hard turn to the left on to Wrangle Hill Road. At that instant Gardner, not seeing any signal to turn or any crossing of lanes, was overtaking and passing the convoy in the *left* lane of the northbound section. When the left front wheel of Bilbrey's truck was approximately 2 or 3 feet to the left of the center line and parallel with the southern boundaries of Wrangle Hill Road, the front bumper of the truck struck the car driven by Gardner, raking the right side from the front of the right-front door to the right rear fender, thereby causing Gardner to lose control and causing the car to veer to its right entirely off the highway and down an embankment. Bilbrey never saw the vehicle until the impact of the collision.

2. The Federal Government by statute has subjected itself to tort liability only where its agent has acted within the scope of his employment on its behalf [4] and has not engaged in the exercise or performance of a discretionary function or duty.[5] Since the evidence shows the purpose of the convoy and the route traveled were designated by proper army superiors through an official communication; and since Bilbrey was engaged in a non-discretionary function at the time the accident occurred, no legal impediment to the maintenance of this action exists.

3. The Delaware Code of 1953 provides that before turning from a direct line, the driver of any vehicle upon a highway *"shall first see that such movement can be made in safety * * * and whenever the operation of any other vehicle may be affected by such movement, shall give a signal * * * plainly visible to the driver of such other vehicle of the intention to make such movement."*[6] (Emphasis added.) This pro-

---

1. 28 U.S.C. § 1346(b) confers exclusive jurisdiction upon the district courts.

2. 28 U.S.C. § 1402(b).

3. As required under 28 U.S.C. § 2402.

4. 28 U.S.C. § 1346(b).

5. 28 U.S.C. § 2680, as interpreted and applied in Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

6. Del.Code 1953, Tit. 21, § 4137(a).

vision does not require a motorist before making a left turn to be certain of absolute safety, for such a construction would unnecessarily hamper the streams of traffic on our highways and result in causing a greater problem than it seeks to relieve. What it does require is a duty of care that is reasonable under the circumstances and commensurate with the degree of risk. The risk inherent in left turns from the right lane is peculiarly great and must be met by the driver with the utmost vigilance. In this instance, the agent of defendant is held to more than was shown.

The Delaware Code also requires that when the driver of a vehicle intends to turn to the left at an intersection, he "shall *approach* such intersection *in the lane for traffic to the right of and nearest to the center line* of the highway and in turning shall pass *beyond the center of the intersection,* passing as closely as practicable to the right thereof before turning such vehicle to the left." [7] (Emphasis added). The "center of the intersection" is taken to mean "the meeting point of the medial lines of the highways intersecting one another." Defendant's agent not only attempted a left turn from the right lane of the northbound section, e. g., the line *furthest* from the center lane of the dual highway, but, as indicated by the point of contact of the two vehicles, negotiated that turn *before* passing beyond the center of the intersection. This is clearly in transgression of statutory rules of the road designed to regulate traffic and protect the public.[8] More specifically, it constitutes negligence in law.[9]

4. Defendant's agent also violated the common law duty imposed upon an operator of a motor vehicle upon a public highway to maintain constantly a proper lookout for the presence of other vehicles.[10] What is a proper lookout depends on the attending circumstances in each case. A change of course prompts a vigilant eye to the rear as well as forward and dictates a constant duty of care which is not fulfilled by giving a signal or looking once but by continuing to look until all danger of a collision is past. Here the vehicle in which plaintiff was riding was in plain view and could have been observed by defendant's agent had he exercised the requisite care and caution *throughout* the course of his turn. The failure to realize that care amounted to negligence in law.[11]

5. The negligence of defendant can be translated into terms of legal liability only if it was a proximate or legal cause of the injuries produced, i. e., the cause which in natural and con-

7. Del.Code 1953, Tit. 21, § 4136(a). For a discussion of the phrase " 'intersection of highways' ", see Sherr v. East, 6 Terry 240, 45 Del. 240, 71 A.2d 262, 263.

8. Chapman v. Trump, Del.Super., 110 A. 2d 308, 310.

9. Campbell v. Walker, 2 Boyce 41, 25 Del. 41, 78 A. 601, 604; Zink v. Kessler Trucking Co., 8 W.W.Harr. 271, 38 Del. 271, 190 A. 637, 640; Lynch v. Lynch, 9 W.W.Harr. 1, 39 Del. 1, 195 A. 799, 802; Tyndall v. Rippon, 5 Terry 458, 44 Del. 458, 61 A.2d 422, 425; Warren v. Anchor Motor Freight, Inc., of Delaware, 7 Terry 188, 46 Del. 188, 81 A.2d 321, 322; Bentley v. Interior Milling Co., 8 Terry 453, 47 Del. 453, 93 A.2d 121, 122; De Angelis v. U.S.A.C. Transport, Inc., 9 Terry 405, 105 A.2d 458, 460; Wealth v. Renai, Del.Super., 114 A.2d 809, 810–811.

10. State v. Elliott, 1 Terry 250, 40 Del. 250, 8 A.2d 873, 875; James v. Krause, 6 Terry 404, 45 Del. 404, 75 A.2d 237, 240; State v. Allen, Del.Super., 112 A.2d 40.

11. While Delaware courts have treated the subject rather summarily, i. e., Eskridge v. Ruth, 9 Terry 439, 105 A. 2d 785, 786, most jurisdictions expressly state the failure to maintain a proper lookout as negligence per se. For citations, see 60 C.J.S., Motor Vehicles, § 353, pp. 838–839; Blashfield, Cyclopedia of Automobile Law and Practice § 681 et seq. But see Dauber v. Josephson, 209 Mo.App. 531, 237 S.W. 149, *holding that a driver looking but once at an unobstructed intersection is not guilty of negligence as a matter of law in proceeding into the intersection without looking again.* The distinction is made between failure to maintain any lookout and failure to maintain a constant lookout.

tinuous sequence, unbroken by any efficient intervening cause, produced the injury and without which the results would not have occurred.[12] Defendant contends the negligence of its agent, Bilbrey, created at most a condition which was rendered abortive by the negligence of Gardner. But this view of proximate cause, denoting its full and real sense of intervening force, and sole or superseding cause, depends on a finding of successive negligences surrounding an appreciable interval of time. That is not the case here since the negligence of each, assuming negligence of Gardner, was operating at the time of the accident. The concern, then, is with concurrent or mutual negligences calling for an application of proximate cause in its more limited meaning. Bilbrey's negligence in that sense was a contributing factor in bringing about the injury and is, therefore, actionable.[13]

■ 6. Negligence of the defendant having been established, it becomes necessary to determine whether plaintiff, a passenger in the vehicle, is precluded from recovery because of contributory negligence arising either personally, from acts on his part, or legally, imputed from acts of the driver. It is well settled in Delaware, as in most states, that the negligence of the driver is not imputed to a passenger who lacks the right to control the operation of the vehicle.[14] No right of control was vested in plaintiff. Nor did any relationship exist from which might spring the doctrine of joint enterprise. Consequently, in the light of these conclusions a discussion of the driver's negligence would be irrelevant.

■ The remaining question to decide, then, is whether the plaintiff was guilty of negligence by reason of his own acts or omissions. Defendant contends inasmuch as there was testimony on its behalf to the effect that hand signals were given for a left turn, the plaintiff was negligent in failing to keep a proper lookout and warn the driver of the danger which he had reason thereby to know. Under Delaware law the duty of care required of the passenger "depends on the facts of the particular case, and, particularly, his position in the automobile, his opportunity of seeing the impending accident, and the obviousness of the danger. If the passenger sees the danger in time to avoid the accident, it is his duty to warn the operator. Or, if the passenger is in such position in the car that he must have seen the danger if he had used his sense of sight, as an ordinarily prudent passenger in such position would have done, and the accident happens because of the passenger's failure to see and warn the operator of the

12. Lynch v. Lynch, 9 W.W.Harr. 1, 39 Del. 1, 195 A. 799, 803; James v. Krause, 6 Terry 404, 45 Del. 404, 75 A.2d 237, 241. "While it is difficult, almost impossible, to define 'proximate cause,' the question 'is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent.'" Island Express, Inc., v. Frederick, 5 W.W.Harr. 569, 35 Del. 569, 171 A. 181, 186.

13. For an analysis of the doctrines of proximate cause and last clear chance in Delaware, see Island Express, Inc., v. Frederick, 5 W.W.Harr. 569, 35 Del. 569, 171 A. 181, and Lord v. Poore, 9 Terry 595, 108 A.2d 366. Also see Baker v. Reid, 5 Terry 112, 44 Del. 112, 57 A.2d 103, 107; McCaulley v. Koster, 5 Terry 424, 44 Del. 424, 61 A.2d 389; James v. Krause, 6 Terry 404, 45 Del. 404, 75 A.2d 237, 241; Tompkins v. Bal-

timore & Ohio R. Co., 7 Terry 156, 46 Del. 156, 81 A.2d 288, 290; Disabatino & Raniere v. Gilmore, 7 Terry 323, 46 Del. 323, 83 A.2d 695, 696–697; Pfeifer v. Johnson Motor Lines, 8 Terry 191, 47 Del. 191, 89 A.2d 154, 156; Laskowski v. Atomic Cleaners & Dyers, 8 Terry 198, 47 Del. 198, 89 A.2d 157, 159; Kane v. Reed, 9 Terry 266, 101 A.2d 800, 802.

14. Farley v. Wilmington & N. Electric Ry., 3 Pennewill 581, 19 Del. 581, 52 A. 543, 544 (of first impression); also Campbell v. Walker, 2 Boyce, 41, 25 Del. 41, 78 A. 601, 604; Island Express, Inc., v. Frederick, 5 W.W.Harr. 569, 35 Del. 569, 171 A. 181, 186; Bennett v. Barber, 7 Terry 132, 46 Del. 132, 79 A.2d 363, 364; Eskridge v. Ruth, 9 Terry 439, 105 A.2d 785, 786, limited in Roach v. Parker, 9 Terry 519, 107 A.2d 798. See Stevenson, Law of Negligence in the Atlantic States 1090–1091, 1108.

**52**

danger he must have seen, he would be guilty of contributory negligence."[15]

It is important to view this question in the light of all the facts and circumstances. The previous determination has been made here that the signals of the defendant's agent were, in law, insufficient notice of an intention to make a left turn. Also, plaintiff was a resident of another state and unfamiliar with the roads and conditions in Delaware. The fact he was in a position to see the danger would have more weight had the danger been more obvious. While the courts require the passenger as well as the driver to exercise due care and caution, the degree of care is by no means the same. The passenger has a right to rely to a great extent, on the prudence, care and skillfulness of the operator, and the circumstances may clearly justify a failure to maintain a lookout. If otherwise, the passenger would assume the position of an insurer against liability on a theory neither required by the demands of safety nor in accord with the realities of automotive practice. Consequently, this court cannot find plaintiff failed to act as an ordinarily prudent person would act in a similar position and relation.

■ 7. Plaintiff's medical, hospital, etc., expenses were established at $544.60. Transportation expenses from Wilmington to Chicago were fixed at $205. Loss of earnings was shown to be $1,440.50. As a result of the collision plaintiff charged defendant's negligence caused him to receive a cerebral concussion, fracture of the spinus process of the 5th lumbar vertebra and fractures of the 5th, 6th and 12th ribs, "injuries to his left shoulder". And "as a result of said injuries", plaintiff will suffer for the remainder of his life from frequently recurring headaches. Plaintiff seeks for all damages, including those noted, $25,000.

Plaintiff will be awarded the medical items of $544.60, as well as the transportation figure of $205 and loss of earnings of $1,440.50. For the physical injuries including pain and suffering $8,500 will be awarded.

Judgment will be entered for plaintiff for the total amount of $10,690.10.[16]

---

15. Poynter v. Townsend, 3 W.W.Harr. 51, 33 Del. 51, 130 A. 678, quoted in Burton v. Delaware Poultry Co., 2 Terry 68, 41 Del. 68, 15 A.2d 440, 441. For earlier expressions, see Farley v. Wilmington & N. Electric Ry., 19 Del. 581, 52 A. 543, 545; Ewans v. Wilmington City

Ry. Co., 7 Pennewill 458, 23 Del. 458, 80 A. 634, 635; Campbell v. Walker, 2 Boyce 41, 25 Del. 41, 78 A. 601, 604.

16. This opinion contains the required findings and conclusions under Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.