(No. 23809.—

WILLIAM AGNEW, Appellant, *vs.* WOODRUFF & EDWARDS, INC. Appellee.

*Opinion filed February 12, 1937.*

DRAKE H. BERG, for appellant.

ARTHUR L. PAULSON, and W. BEN MORGAN, for appellee.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

The plaintiff filed his third amended complaint of two counts in the circuit court of Kane county to recover from the defendant, damages for injuries to the plaintiff's health. It is conceded that only count one is involved here.

The cause of action is based upon the provisions of an act concerning "Protection from Poisonous Fumes or Dust" (State Bar Stat. 1935, Chap. 48, pp. 1580-81.) Count one charged that the plaintiff had been employed in different capacities since 1917 in defendant's factory at Elgin. In the course of his employment he was required to work in rooms from seven to sixteen feet below the surface of the ground. There as a laborer for the defendant he handled large quantities of sand, silica and other finely

powdered dusts and by means of power driven carborundum wheels and divers other wheels and grinding machines coated with emery and carborundum, ground various forms of metal products; thereby large quantities of noxious dusts of a dangerous character were thrown into the rooms and permeated the air where the plaintiff worked; as a direct result of defendant's wilful violation of the statute plaintiff contracted a pulmonary condition known as siderosis, pneumoconiosis, silicosis, pulmonary tuberculosis and various other pulmonary and bronchial complications. The defendant made his motion in the nature of a demurrer to dismiss the complaint. The motion challenged the constitutionality of the legislative act. The trial court sustained the motion and dismissed the suit. Plaintiff brings the record here on appeal.

Section 1 of the statute is as follows: "That every employer of labor in this State, engaged in the manufacture, repairing or altering of any metals, wares or merchandise which may produce or generate poisonous or noxious fumes or dusts in harmful quantities, such as metal polishing, grinding, plating and dipping of metals in acid solutions or dips, are hereby declared to be especially dangerous to the health of the employees so engaged. Such manufacture, repairing or altering of any metals or merchandise in such processes and places of employment shall be conducted in rooms lying wholly above the surface of the ground." Section 2 provides for the enforcement of the act and the inspection of the manufacturing plants. Section 3 provides that for the violation of the act, the employer shall be fined. For an injury to the health of any employee caused by the employer's wilful violation of the act or wilful failure to comply with any of its provisions, section 4 grants the employee a right of action; in case of loss of life occasioned by such wilful violation or wilful failure to comply with such provisions, a cause of action is allowed the widow, "lineal heirs," adopted children or other dependents.

There could be no recovery at common law for the injuries set forth in the complaint. (*McCreery* v. *Libby-Owens-Ford Glass Co.* 363 Ill. 321; *Vogel* v. *Johns-Manville Products Corp.* 363 id. 473.) If recovery is permitted such right must originate under the terms of the legislative act. It purports to have become effective July 1, 1915. Section 33 of the Occupational Diseases act approved March 16, 1936, (Laws of 1935-36, 1st, 2d, 3d and 4th Special Sessions, pp. 73, 74) in express language repeals the act of 1915. The plaintiff cites no cases where recovery has been had under the statute which is the basis of the suit. The defendant asserts there are none. Our own research fails to locate a decision of our own court where this particular statute was before us for review. We have been unable to find any decision upon a like statute by any court of review of a foreign jurisdiction. The plaintiff has not directed our attention to any such decision.

It is perfectly obvious that the first sentence of section 1 is highly ambiguous. It could almost be said to be meaningless. The plaintiff contends the true interpretation of section 1 is that the process of manufacturing by the methods designated in such section is declared to be especially dangerous to the health of the employees so engaged; that the employer is charged thereby with knowledge that such means are inimical to the employee's health; such employers are classified by the legislature and prohibited from operating their industries below the surface of the ground.

In reviewing the case here we adopt, for the purpose of consideration, the interpretation placed upon section 1 by the plaintiff, but there then remains the question of whether the act is within the terms of the constitution. If the act is sustainable, it must be by virtue of the exercise of the police power by the legislature. To come within the fold of the police power, the statute must have a direct relation in some degree towards the protection of the health

of employees engaged in the type of labor mentioned in section 1.

It appears from the four corners of the law that the source of injury to toilers, regardless of whether their work is carried on above or below the surface of the ground, is the generation of noxious fumes and dusts in harmful quantities in the rooms where the laborer pursues his calling. The factor properly calling into action the exercise of the police power by the General Assembly would seem to be not the location of the factory work rooms but rather the extent and manner of ventilation, if any, by which the dangerous fumes, gases and dusts incident to such class of manufacturing might speedily be removed from the place where the work was in progress.

The act does not attempt to set up a standard by which all manufacturers operating such mechanical processes mentioned in section 1, regardless of the location of the rooms wherein the work is carried on, shall furnish the workman sufficient means of heat, light and ventilation.

In 1911 the General Assembly passed a law by which it was declared by section 1 thereof "That no person shall be employed to operate any emery wheels or emery belts of any description, either leather, leather covered, felt, canvas, paper, cotton, or wheels or belts rolled or coated with emery, corundum or cotton, or wheels used as buffs, in any basement so-called, or in any room lying wholly or partly beneath the surface of the ground." (Laws of 1911, p. 314.) Section 2 provided a penalty for the violation of the terms of section 1.

The constitutionality of that act was the issue before this court in *People* v. *Schenck,* 257 Ill. 384. We there held that the statute was an unjustifiable discrimination against persons who carried on, in basements, the type of industry mentioned in section 1 of that act in competition with those operating the same businesses in quarters above the surface of the ground; that there was no substantial

nor rational difference between those operating in rooms partly or wholly beneath the ground level and those conducting like businesses in rooms above the ground.

The act of 1911 referred to employees operating emery wheels and like grinding or polishing machinery in basements. The act of 1915 purports to regulate the business of those conducting manufacturing operations in underground rooms where the machinery employed produces poisonous fumes and dust. There is no substantial legal difference between the two acts. The businesses named in section 1 of the act of 1915 are lawful. The law itself recognizes that fact but as a health measure undertakes to regulate such manufacturing that is. conducted below the ground surface, while not regulating the same businesses conducted above the ground level. The production of deleterious gases and dusts, and not the location of the business where the same are produced, is the agency which inflicts injuries to the workman's health. The legislature has the unquestioned right, under the police power, to adopt reasonable laws for the protection of the health of those engaged as laborers in industry but it cannot, by calling a statute a health measure, arbitrarily and capriciously deprive the owner of his property. Section 1 of the act of 1915 unlawfully discriminates between persons similarly situated and is an invasion of property rights under a purported police power. It violates section 2 of article 2 and and section 22 of article 4 of the constitution of this State and the fourteenth amendment to the Federal constitution. (*Consumers Co.* v. *City of Chicago,* 298 Ill. 339; *People* v. *Weiner,* 271 id. 74; *People* v. *Schenck, supra.*) The other sections of the act of 1915 are dependent upon section 1, and fall with it.

The judgment of the circuit court of Kane county was correct and is affirmed.                *Judgment affirmed.*