CLARENCE W. McCAULLEY v. DONALD M. KOSTER.

(*September* 8, 1948.)

LAYTON, J., sitting.

*Thomas H. Wingate* for Plaintiff.

*William Prickett* for Defendant.

Superior Court for New Castle County, No. 161, January Term, 1947.

LAYTON, J.

I do not intend here to enter into a detailed analysis of the various ramifications of the last clear chance doctrine as it is generally known. The doctrine has been carefully analyzed both in *Island Express v. Frederick*, 5 *W. W. Harr.* 569, 171 *A.* 181 and *Baker v. Reid*, 5 Terry 112, 57 *A. 2d* 103. The sole question before me here is, from the uncontroverted facts, did a last clear chance exist in favor of the Defendant? Or, to state it otherwise, was the emergency created by Plaintiff entering the main highway in the face of Defendant's oncoming car so immediate that there was no real opportunity to avert the collision? In order to decide the point a detailed examination of the testimony is necessary. Certain mathematical deductions based upon Plaintiff's testimony as to the manner in which the accident occurred indicate that his version of the collision was so mistaken as to be incredible. Both on direct and cross examination Plaintiff testified that when he first saw Defendant's car, it was about 75-100 yds. distant travelling at an approximate speed of 50 miles per hour and that, from the moment he saw Defendant's machine, he (Plaintiff) travelled only 6 ft. before the collision. Assume Plaintiff's speed was 10 miles per hour and that Defendant was, in fact, 75 yds. away going 50 miles per hour when Plaintiff first saw him. It took Plaintiff about 2/5 of a second to move 6 feet going at 10 miles per hour. Travelling at

50 miles per hour Defendant would have gone about 30 ft. Thus, he would still have been 195 ft. distant at the moment Plaintiff asserts the collision took place. Or, to state it in another way, in order for Defendant to have moved 225 ft. while Plaintiff was going 6, Defendant would have to be travelling at a speed of 340 miles per hour. The testimony of Plaintiff as to the manner in which the accident happened is obviously incredible based, as it was, upon his mistaken memory of the relative speeds and distances involved. Under such circumstances, there is nothing to do but disregard it completely. *Reilly v. City of Philadelphia*, 328 *Pa.* 563, 195 A. 897; *Norfolk & Western R. Co. v. Strickler*, 118 *Va.* 153, 86 *S.E.* 824; *Brown v. Mailhot*, 89 *N.H.* 240, 196 *A.* 764.

I am forced, therefore, to rely upon Defendant's version of the accident as adduced by way of direct, cross and re-direct examination in order to arrive at the answer to the question posed heretofore. Defendant stated that he first saw Plaintiff's car stopped behind the stop sign in question when he was about 200 ft. distant from the intersection and travelling at approximately 28 miles per hour. He then slowed down slightly. As he reduced his speed, he observed Plaintiff's car approaching the intersection slowly. When Defendant was 60-75 ft. from the intersection Plaintiff's car suddenly proceeded into the intersection directly in front of Defendant's oncoming car, at which point Defendant swerved to the left, applied his brakes and skidded into a collision. There was no rebuttal offered by Plaintiff.

My examination of the evidence indicates that Defendant's reaction to the emergency was completely normal. When he saw Plaintiff's car start up from back of the stop sign and slowly approach the intersection he was under no duty to assume that Plaintiff would suddenly drive into the intersection immediately in front of him. Only at the time Plaintiff suddenly proceeded out into the intersection was

the absolute duty imposed on Defendant to attempt to avoid the accident. At that moment he was travelling about 37½ feet per second. He swerved sharply to the left and applied his brakes by which time it is reasonable to assume that he had travelled almost half way to the intersection. I say this because I believe that the average person fails to appreciate the length of time involved for a normal driver to comprehend, and react to, a sudden emergency. Seeing that Plaintiff was not going to stop, Defendant naturally slammed on his brakes and, because of the wet pavement, went into a skid. His account of the accident is not only credible but consistent with the evidence of the police officer who testified that, although very faint, Plaintiff's skid-marks appeared to be about forty or fifty feet in length. Plaintiff, who was not looking, can not be heard to deny the truth of Defendant's testimony. Nor, as Plaintiff's attorney suggests, was Defendant, faced with an emergency not of his own making, bound to adopt that which, from hindsight, now appears to have been the only means of avoiding the accident; that is, instead of having swerved left to pass in front of Plaintiff, to have swerved right and passed behind him. The law does not impose such an exacting degree of care upon one faced with a sudden crisis.

■ Finally, I place no great weight on Defendant's apparent admission in the magistrate's court that he thought he might have avoided the accident had he acted sooner. The statement was not explained. He may well have meant that he could have prevented the collision had he known Plaintiff intended to drive out upon the main highway directly in front of his oncoming car. In any event he would make no such admission while testifying at the trial before me. Under such circumstances it is not for a jury to speculate whether Plaintiff was entitled to the benefit of the last clear chance doctrine. *Leedom v. Pennsylvania R. Co.,*

3 *Terry* 186, 29 *A.* 2*d* 171.   In my opinion, the facts are susceptible of but one interpretation; namely, that the emergency was so sudden that there was no time to avoid the accident.   It follows, therefore, that the last clear chance doctrine is not applicable in this case.   38 American Jurisprudence, Negligence, Sec. 219.   See also cases collected on this subject in 119 *A.L.R.* 1048.

The motion for a new trial is denied.