## EX PARTE JOHN W. BELL.

### *No. 248. Decided June 23.*

**1. Municipal Charter and Ordinance — Variety Shows.**—Where a city charter expressly grants and confers upon the city council authority to prohibit, segregate, and regulate bawdy houses and variety shows, such authority, to be legal and valid, must be exercised in harmony with the criminal laws of this State.

**2. Variety Shows and Theatres not per se Illegal.**—A variety show or theatre eo nomine has never been declared illegal, or its existence declared a penal offense, nor is a penalty affixed thereto by the laws of this State.

**3. Same—Disorderly House.**—Articles 339 and 341a of the Acts of 1889, define and declare what are the elements essential to constitute a theatre, play house, or variety show a disorderly house, and since such disorderly houses are forbidden.by law, a variety show, to come within the prohibition, must be a disorderly house within the purview of those articles.

**4. Same.**—Where the city council, under a charter which empowered them "to prohibit, and punish keepers and inmates of bawdy houses and variety shows, and to segregate and regulate the same, and determine such inmates and keepers to be vagrants," passed "An ordinance to define what are variety theatres and variety shows," in which it was in effect declared, that any place is a variety show where persons gather together and engage in music and dancing, or plays and exhibitions, and liquor is drunk, sold, or offered for sale, or given away to any person present or visiting such place: *Held*, that such ordinance is not only vague, indefinite, and uncertain, but is also invalid, in that it is beyond the power conferred by the charter upon the council, and contains none of the essential elements of a disorderly house as denounced by law.

THE nature and character of this proceeding is fully and sufficiently stated in the opinion of the court.

*Kittrell & Allen* and *Perryman & Bullitt*, for relator.—We submit, first, that the ordinance is illegal and invalid, because it attempts to make those things which are in themselves innocent, a crime, and to declare a variety show per se a nuisance, by simple ordinance, regardless of the manner in which it is conducted or the character of the performances. That such is not the fact, namely, that a variety show is per se a nuisance, is too obvious to require discussion.

Furthermore, by the terms of such ordinance, not only variety shows are declared to be nuisances, but it is most evident, as a careful inspection of the ordinance will show, that in any house in Houston, private or public, where people of different sexes meet and sing or dance, and where to such persons refreshments in the way of liquors are offered, is thereby made by this ordinance a variety theatre. This being true, we submit that no private citizen in the city of Houston could have guests at his house, and have music and dancing, and offer such guests refreshments in the way of intoxicating liquors, without subjecting himself to the pains

and penalties prescribed by the ordinance in question. Wherefore, we say that such ordinance is ultra vires the board of aldermen of the city of Houston, or any other legislative body, whether State or municipal.

We submit further, that it is not the question in this case what the council intended, or what may be done under the ordinance, but the question in passing upon its validity is, what can be done under and according to its terms?

We submit further, that the mere declaration in the ordinance of a municipal council, that any certain vocation, pursuit, or exhibition is a nuisance, and therefore subject to be suppressed, does not and can not of itself operate to make such vocation, pursuit, or exhibition a nuisance; but whether or not it is so a nuisance must depend upon the facts, and its character as such must be judicially determined before such an ordinance can be enforced.

We submit further, that no citizen can be legally subjected to the mere whim of a municipal council, and his business be declared to be criminal, and the officers of the city to be thereby authorized, regardless of what the actual facts are, to arrest the person following such business or managing such exhibition, but that such arrest or attempted arrest is illegal and without the due process of law.

We submit the following authorities as bearing upon and being pertinent to the foregoing propositions of law: Ex Parte Robinson, 30 Texas Cr. App., 493; City of Arkadelphia v. Clark, 11 S. W. Rep., 957; "Matter of Frazee," 6 Am. State Rep., 310; Ex Parte Ah Lit, 26 Fed. Rep., 512; 1 Dill. on Mun. Corp., sec. 89. Use of particular words control general: Bish. on Stat. Crimes, sec. 136. Statute must cover the crime; no implication: Bish. on Stat. Crimes, sec. 194.

No brief for Respondent.

SIMKINS, JUDGE.—Appellant was arrested, upon a charge of keeping a variety show, by the city marshal of the city of Houston, and at once sued out a writ of habeas corpus before the Hon. E. D. Cavin, judge of the Criminal District Court of Harris County, upon the ground, that the ordinance under which such arrest was made was void, because it was ultra vires, the city council having no power to declare acts innocent and legal in themselves to be criminal, and because the said ordinance is too indefinite and vague to be the basis of any action. Under the authority of Ex Parte Gregory, 20 Texas Criminal Appeals, 214, the trial court suggested that the questions involved be referred directly to this court, and it was so brought. It was admitted on the part of the city that relator, Bell, is under arrest and in custody of the city marshal of Houston by virtue of the ordinance set forth in the petition for habeas corpus.

The object of this appeal is to determine the validity and legality of the ordinance hereafter set out.

The portion of the city charter bearing on the question, and which authorizes the city to pass an ordinance thereon, is as follows: "The city council shall have power to prohibit and punish keepers and inmates of bawdy houses and variety shows, and to segregate and regulate the same, and determine such inmates and keepers to be vagrants." On the 24th of April, 1893, in pursuance of the charter, the city council passed the following ordinance:

*"An Ordinance to Define what are Variety Theaters and Variety Shows, and to Prohibit their Existence.*

" Be it ordained by the city of Houston: First. That a variety theater or variety show, as contemplated by the provisions of this ordinance, is any room, tent, building, or place of any character or description whatever, where any person or persons, male or female, or both, engage in making music, singing, or dancing, or who participate in plays or exhibitions of any character whatever, where beer, wine, whisky, brandy, or any kind of intoxicating liquor is drank, sold, or offered for sale or exchange or barter, or solicited to be sold, or is given away, or in any manner offered or presented to any person or persons who may be present in or visiting such room or place, tent or building, or any place or institution that is commonly known or recognized as a variety theater or show, is included within the provisions of this ordinance.

" Second. Any person who shall in anywise participate in any of the performances, or engage in any manner in conducting, managing, or operating any variety theater, or variety show, as defined by this ordinance, shall be deemed and held to be guilty of a violation of this ordinance, and upon conviction thereof shall be punished by a fine of not less than $25 nor more than $100 for each offense, and each exhibition at such variety show or theater shall be deemed and held to be a separate offense, under the provisions of this ordinance.

" Third. This ordinance shall take effect thirty days after its passage.

" Passed April 24, 1893."

Conceding that the city charter confers the right upon the city council to prohibit or to segregate and regulate the bawdy houses and variety shows, that in fact such a right is expressly granted by the very terms of the charter, and that all powers necessary to carry out such right are also granted, yet it will not be denied that the granted right must be legally exercised in harmony with the criminal laws of this State. While the fact that the charter puts bawdy houses and variety shows upon the same footing, and gives the city the right to prohibit or segregate them, evidently shows that the Legislature regarded such shows as essentially, if not equally, vicious; yet a variety show or theater eo nomine has never

been declared illegal, nor its existence declared a penal offense, nor is a penalty affixed thereto by the law of this State. Penal Code, art. 3. In the absence of such legislation, it is certainly not in the power of the city council to group together a certain number of acts, innocent in themselves, or not illegal, and by calling it a " variety show," undertake to prohibit and punish parties engaged therein. The forbidden act must contain such elements as are defined and denounced by law.

The Legislature has passed a general law on this subject in what is known as the " Disorderly House Act." Acts 1889, page 33, articles 339, 341a, declare any theater or play house where intoxicating liquors are sold, and prostitutes or lewd—that is, impure—women or women of bad reputation are employed in any capacity, constitutes a disorderly house. Any variety show or theater combining these elements comes within the prohibition of law, and is a disorderly house, whatever be the name given to it by the proprietors or the public. Without these elements it can not be declared illegal. Where these elements exist, the inmates and proprietor may, under proper ordinance, be arrested and convicted of vagrancy, as stated in the charter, or may be punished as prescribed by the statute.

Disorderly houses are forbidden by law, and a variety show, to come within the prohibition, must, in effect, be a disorderly house. The ordinance in question is too vague and indefinite to sustain a conviction. The declared object of the ordinance is to define variety theaters, and prohibit their existence; yet, if its definition is correct in declaring that a place is a variety show where persons gather together with music and dancing, and drink wine and other intoxicating liquors, then, indeed, the law may lay its hands on many a private and social gathering in the city of Houston. It will not do to say that such gatherings will not be disturbed by the officers of the law. That would leave it entirely to the officers' discretion when they should interfere. Criminal law, in Texas, whether statute or ordinance, must be plainly written to be effective. Nor is the latter part of the ordinance, " that a variety show is any place or institution known or recognized as a variety show," to be regarded as a definition. To punish a man for the violation of law which rests on what witnesses may consider a variety show is to make the law vary with witnesses and localities, if not with every jury, instead of being certain and definite, as criminal law must be. The ordinance here is not only vague and indefinite, but in fact contains none of the essential elements of a disorderly house, denounced by the law, and clearly within the power of the city to prohibit; and the further prosecution of the relator by virtue of the ordinance is hereby dismissed, appellant to pay the costs of this appeal, and be discharged from custody.

*Relator discharged.*

Judges all present and concurring.