Charles M. STANGLIN, Individually
and D/B/A Twilight Skating
Rink, Appellant,

v.

CITY OF DALLAS and Billy Prince,
Chief of Police, Appellees.

No. 05–86–01265–CV.

Court of Appeals of Texas,
Dallas.

Oct. 29, 1987.

Rehearing Denied Dec. 16, 1987.

Sol Villasana, Dallas, for appellant.

Richard E. Young, Dallas, for appellees.

Before HOWELL, STEWART and THOMAS, JJ.

HOWELL, Justice.

Plaintiff, Charles M. Stanglin, brought this action to contest the validity of an ordinance regulating the operation of dance halls expressly catering to a juvenile clientele. The trial court denied relief. Finding the age limit portion of the ordinance unconstitutional as applied to plaintiff Stanglin, we reverse and enjoin its enforcement.

We uphold the restriction on hours of operation.

Plaintiff operates the Twilight Skating Rink in the City of Dallas. It has been subject only to minimal regulation by the City. On the other hand, the City has strictly regulated dance halls for many years. In general, such places have been off-limits to persons of high-school or junior-high school age. In order to allow the operation of premises where persons of younger age might dance, the City authorized the licensing of "Class E" dance halls, and plaintiff obtained such a license. He divided the floor of his skating rink with moveable plastic cones or pylons, the same as used on streets to direct traffic around collisions and construction areas. On one side of the pylons, his patrons dance; on the other side, they skate, all to the same music and all in full view of one another.

The ordinance regulating Class E dance halls forbids anyone other than persons between fourteen and eighteen years of age to dance, or even be present therein— parents, guardians, law enforcement and operating personnel are excepted. In addition, Class E dance halls may not open until after school hours and must close at midnight.[1] No such restrictions apply to plaintiff's roller skating operations. Plaintiff attacks the constitutionality of restricting his dance hall operations more than his roller skating operations.

The Twilight is generally well-operated. The management prohibits the use of alcohol and drugs on the premises, congregating outside the building, altercations, reckless conduct, and sexual contact. Security officers are present at all times. Although the Twilight's increased popularity has prompted complaints about excessive traffic, the use or sale of drugs and other illicit and offensive conduct, the trial court found (and neither party disputes) that the police have controlled these problems without significant difficulty. The trial court also found, without dispute, that enforcement of the ordinance's age and hour restrictions against the Twilight is likely to result in a loss of business and profit for plaintiff.

One of plaintiff's challenges is that the ordinance unconstitutionally infringes on the right of children between ages fourteen and seventeen[2] to associate with others outside such age bracket. Because plaintiff is among the vendors, and those in like position, whom the courts uniformly have permitted "to resist efforts at restricting their operations by acting as advocates for the rights of third parties who seek access" to the services they provide, plain-

1. PERSONS UNDER 14 AND OVER 18 PROHIBITED:

(a) No person under the age of 14 years or over the age of 18 years may enter a Class E dance hall.

(b) A person commits an offense if he is over the age of 18 years and:

(1) enters a Class E dance hall; or

(2) for the purposes of gaining admittance into a Class E dance hall, he falsely represents himself to be:

(a) of an age from 14 years through 18 years;

(b) a licensee or an employee of the dance hall;

(c) a parent or guardian of a person inside the dance hall; or

(d) a governmental employee in the performance of his duties.

(c) A licensee or an employee of a Class E dance hall commits an offense if he knowingly allows a person to enter or remain on the premises of the dance hall who is:

(1) under the age of 14 years; or

(2) over the age of 18 years.

(d) It is a defense to prosecution under Subsections (b)(1) and (c)(2) that the person is:

(1) a licensee or employee of the dance hall;

(2) a parent or guardian of a person inside the dance hall; or

(3) a governmental employee in the performance of his duties.

DALLAS CITY CODE § 14–8.1.

HOURS OF OPERATION

\* \* \* \* \* \*

(d) A person commits an offense if he operates a Class E dance hall during any hours other than the following:

\* \* \* \* \* \*

(2) When school is not in session in the school district in which the dance hall is located, between the hours of 1:00 P.M. and 12:00 midnight, Monday through Sunday.

DALLAS CITY CODE § 14–5(d).

2. The parties argued at trial and the court concluded that the age limit in the ordinance was seventeen years of age. The ordinance, however, applies to "persons under 14 and over 18."

tiff is entitled to assert "those concomitant rights of third parties that would be diluted or adversely affected should [his] constitutional challenge fail." *Carey v. Population Services International,* 431 U.S. 678, 683–84, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977) (citations omitted). Thus, plaintiff has standing to assert the rights of those whom the ordinance most directly seeks to regulate.

■ The First Amendment right of association is fundamental, *NAACP v. Button,* 371 U.S. 415, 430, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963), and is "an inseparable aspect of the 'liberty' assured by the due process clause of the Fourteenth Amendment." *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958). The right to freely associate is not limited to "political" assemblies, but includes those that "pertain to the *social, legal, and economic benefit*" of our citizens. *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965) (emphasis added).

■ The U.S. Court of Appeals for the Fifth Circuit has held that social association, even on street corners, is constitutionally protected. *Sawyer v. Sandstrom,* 615 F.2d 311, 317 (5th Cir.1980). To justify a restriction of this fundamental right, the legislative body must show a compelling interest. *Sotto v. Wainwright,* 601 F.2d 184, 191 (5th Cir.1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1597, 63 L.Ed.2d 784 (1980). An ordinance that affects the fundamental right of association must not unnecessarily restrict constitutionally protected activity; regulation where necessary or proper must be accomplished by the least restrictive means. *Aladdin's Castle, Inc. v. City of Mesquite,* 630 F.2d 1029, 1042 (5th Cir.1980), *rev'd in part and remanded on other grounds,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), *on reh'g,* 713 F.2d 137 (5th Cir.1983).

■ Minors are "persons" under the Constitution, *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731 (1969), and are protected by the Bill of Rights and the Fourteenth Amendment, *In re Gault,* 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967). Thus, the right of children to associate freely, like that of adults, includes association for social purposes. *Johnson v. City of Opelousas,* 658 F.2d 1065, 1072 (5th Cir.1981).

■ Of course, the state's power to control the conduct of children "reaches beyond the scope of its authority over adults...." *Prince v. Massachusetts,* 321 U.S. 158, 170, 64 S.Ct. 438, 444, 88 L.Ed. 645 (1944). However, the state's broader authority to regulate children's activities may be exercised only "if a special circumstance of youth creates a unique danger to minors [that] presents the state with an interest in regulating their activities that does not exist in the case of adults." *Aladdin's Castle,* 630 F.2d at 1042. Restrictions on minors that would be unconstitutional when applied to adults may pass constitutional muster if they serve a "significant state interest ... that is not present in the case of an adult." *Planned Parenthood v. Danforth,* 428 U.S. 52, 75, 96 S.Ct. 2831, 2844, 49 L.Ed.2d 788 (1976).

■ Defendant City contends that the challenged ordinance represents a carefully tailored mechanism designed to protect minors from detrimental, corrupting influences.[3] Certainly, the state, or its municipal subsidiaries, may restrict the activities of minors in a manner that limits their presence around or access to alcohol, drugs and sexually oriented behavior. *See, e.g., Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (state statute prohibiting sale of sexually oriented magazines to minors under age seventeen held constitutional). However, "a governmental purpose to control or prevent activities [that are] constitutionally subject to

---

**3.** Ray Couch, an urban planner for defendant City's Department of Planning and Development, testified that "older kids [whom the ordinance prohibits from entering Class E dance halls] can access drugs and alcohol, and they have more mature sexual attitudes, more liberal sexual attitudes in general.... And we're concerned about mixing up these [older] individuals with youngsters that [sic] have not fully matured."

state regulation may not be achieved by means [that] sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964).

Defendant City's stated purposes in enacting the challenged ordinances may be achieved in ways that are less intrusive on minors' freedom to associate. The most direct means of protecting juveniles from detrimental influences is to apprehend and prosecute those who induce them to engage in illegal behavior, such as the unauthorized use of drugs and alcohol. Education and punishment are the usual deterrents of crime, "not abridgement of the right[ ] of . . . assembly." *Whitney v. California*, 274 U.S. 357, 358, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring). Indeed, the court below found that the police have handled problems with drug sales and use, and other offensive and illicit conduct, in the area of the Twilight without significant difficulty. Thus, the ordinances challenged by plaintiff sweep more broadly than is necessary to accomplish their underlying purposes, especially in light of the extent to which they restrict the right of association. *See Aladdin's Castle*, 630 F.2d at 1047.

■ It is true that an ordinance may be constitutionally permissible as applied to children, if it is designed to accommodate "the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; [or] the importance of the parental role in child rearing." *Bellotti v. Baird*, 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979) (Powell, J., plurality opinion). However, none of these considerations justify the overbreadth of Section 14–8.1 of the ordinance before us. A child's right of association may not be abridged simply on the premise that he "might" associate with those who would persuade him into bad habits. If a sweeping test of this nature be established, the associational rights of minors will be drastically impinged upon. *See id.*

Defendant City argues that the ordinance compensates for children's unique vulnerability to the detrimental influences of those whom the ordinance excludes from Class E dance halls, and that it is thus entitled to "adjust its legal system to account for [the] children's vulnerability...." *Id.* at 635, 99 S.Ct. at 3044 (citing *McKeiver v. Pennsylvania*, 403 U.S. 528, 550, 91 S.Ct. 1976, 1988, 29 L.Ed.2d 647 (1971)). However, we conclude that neither the activity of dancing *per se*, nor association of children aged fourteen through eighteen with persons of other ages in the context of dancing renders such children peculiarly vulnerable to the evils that defendant City seeks to prevent. The answer lies in supervision, not in strict segregation by age group. There is no showing that the less restrictive means of supervision will be ineffectual to control the evil perceived in allowing, say a twenty-year-old, from entering the premises and peaceably and consensually dancing with a fourteen-year-old.

Although defendant City's desire to shape the sexual attitudes and mores of its minor citizens may be well-motivated, legislation in the name of "children's peculiar vulnerability" is not justified. "Associations cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them." *Aladdin's Castle*, 630 F.2d at 1043 (quoting *Erzoznik v. City of Jacksonville*, 422 U.S. 205, 213–14, 95 S.Ct. 2268, 2274–75, 45 L.Ed.2d 125 (1975)).

Neither can this section of the ordinance be justified on the basis of children's "inability to make critical decisions in an informed, mature manner." The City's expert testified that "[s]ometimes these, these youngsters are very immature and we're not sure that they can exercise good judgment in all cases when they are intermingled with those older individuals in a setting where you have dancing and . . . lots of music." Although certain children between ages fourteen and eighteen may be "very immature," they are nevertheless permitted to express their views on controversial public issues, *e.g.*, *Tinker*, 393 U.S. at 503, 89 S.Ct. at 733 (children permitted constitutionally to express their views on

the Vietnam war by wearing armbands to school as a symbol of protest), and to secure abortions without parental consent. It would be incongruous to permit children to make such critical decisions while forbidding them from choosing dance partners over the age of eighteen.

We further conclude that this section of the ordinance inhibits, rather than promotes, the parental role in child-rearing. It is primarily the responsibility of the parent, not the City, to tell the minor how old his dance partner may be. At the same time, we recognize that the rights of parents to control the rearing of their children is not exclusive. *See Prince*, 321 U.S. at 166 nn. 9–12, 64 S.Ct. at 442 nn. 9–12 (the state as *parens patriae* may restrict rights of parenthood in various ways in order to guard the general interest in youths' well-being). We hold that the right of defendant City to restrict the associational rights of children must primarily be limited to the protection from criminal influence. The City's *parens patriae* interest does not justify it in removing from parents the decision as to the age of persons with whom their children may or should associate. *See City of Opelousas*, 658 F.2d at 1074.

 We find that portion of the ordinance fixing hours of operation to be constitutional. The law is well established that dance halls are the proper subject for reasonable regulation wherever a municipality has been granted the authority to exercise its police powers over such activities. *See Bielecki v. Port Arthur*, 2 S.W. 2d 1001 (Tex.Civ.App.—Beaumont 1928), *rev'd on other grounds*, 12 S.W.2d 976 (Tex.1929); *See also, Ex parte Bell*, 32 Tex. Crim. 308, 22 S.W. 1040 (1893).

A municipality may prohibit dancing after certain hours in a restaurant. Such regulation has been held within the valid exercise of police powers delegated to a city. *See Chicago v. Green Mill Gardens*, 305 Ill. 87, 137 N.E. 126 (1922).

The infringement upon associational rights is minimal. Therefore, we apply the rational basis test to determine if there is a legitimate public purpose in the restriction of these operating hours based on the pro-

motion of the public welfare, health or safety. *See Aladdin's Castle*, 630 F.2d at 1039. Here, the city planner, Couch, testified about three reasons for and the purpose of regulating business hours: (1) to safeguard the well being of the young people, (2) to consider the uses of the surrounding neighborhood and residential areas; and (3) to properly supervise children by having a convenient hour for parents to pick up their children from dancing. We conclude there is a rational relationship to the reasons articulated by the City of Dallas in seeking to regulate the operating hours of a Class E dance hall.

We hold Section 14–8.1 of the ordinance placing an age limit on patrons to be unconstitutional as applied to the operations of plaintiff Stanglin and enjoin its enforcement. We hold that Section 14–5(d) restricting hours of operation is constitutional.

REVERSED in part and RENDERED; AFFIRMED in part.