William L. ELAM, Jr., Plaintiff,

v.

Belva B. BOLLING, et al., Defendants.

No. Civ.A. 98–203–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 29, 1999.

Susan D. Oblebay, Pound, VA, Michael M. Raulston, Chattanooga, TN, for plaintiff.

Henry Keuling–Stout, Big Stone Gap, VA, for defendants.

## *MEMORANDUM OPINION*

GLEN M. WILLIAMS, Senior District Judge.

### I. Introduction and Background

It has been said that life imitates art. In a scene more than slightly reminiscent of the 1984 Academy Award-nominated movie *Footloose*, in which a small town outlaws dancing, the Town of Pound, Virginia, enacted Chapter 22 of the Town of Pound Ordinance, §§ 127–138, (hereinafter, "the Ordinance"), prohibiting the allowance of dancing in any place open to

the general public without first obtaining a permit for the operation of such a place.[1]

In order to obtain such a permit, one must apply in writing to the Pound Town Council, setting forth the location where dancing is proposed and the name and address of the person or organization sponsoring such dancing. No other material is required under the Ordinance. Town of Pound Ordinance § 129. The Council, the members of which are named as Defendants to this action along with the Mayor, the Chief of Police and the Council itself, then exercises its discretion in granting or denying the request for a permit. If granted, the permit is good for one year from the date it is issued. If denied, the person making such application may not reapply for a permit for six months from the date of denial. *Id.* at § 134.

In exercising its discretion, the Council may not issue a permit "to anyone who is not a proper person, nor to a person who is not a person of good moral character, nor to a corporation which is not represented by a person of good moral character." The Council is also to consider the "proximity" of a proposed dance hall to residential areas, churches, schools and other buildings, and no applicant "shall be issued a permit for a location that is not suitable for such person." *Id.* at § 131.

Once a permit is issued, it may be revoked by the Council, again "at its discretion for good cause, for a violation of any provision of th[e] Ordinance or regulations." *Id.* at 133. Such regulations bar "any improper or immoral conduct at any public dance." *Id.* at § 132. However, those holding dances "for benevolent or charitable purposes, or when the same are conducted under the auspices of religious, educational, civic or military organizations, are exempted from the provisions of th[e][O]rdinance as long as such dances are not held at a location where alcoholic beverages are commonly served or sold." *Id.* at § 137. However, proposed dances held for such purposes or under the auspices of such organizations must still comply with the provisions of the Ordinance if the dance is to be held at a place where alcohol is commonly served or sold.

Plaintiff, a restauranteur who operates The Golden Pine restaurant in Pound, applied for a dance permit pursuant to the Ordinance, only to see his application tabled when much opposition to his request arose. (Tr. of Prelim. Hr'g at 25–26). In light of the opposition, Elam then withdrew his application because he knew he could not reapply for six months if his request was denied. (Tr. at 26). He then filed the instant action on November 20, 1998, alleging that the Ordinance was facially violative of the United States Constitution,[2] and also unconstitutional as applied to him, and requesting a declaration of such, as well as an injunction against the enforcement of the ordinance. Specifically, he contends that the ordinance violates the protections guaranteed by the First and Fourteenth Amendments to the Constitution.[3] Before the court now are

1. It actually appears as though the substance of the ordinance in question has been on the books in Pound for 18–20 years, and thus predates the movie. (Tr. of Prelim. Hr'g at 36). Art, then, may imitate life in this situation.

2. The court is aware that facial challenges to ordinances are generally disfavored, but are allowed "in the First Amendment context where the licensing scheme vests unbridled discretion in the decisionmaker and where the regulation is challenged as overbroad." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citations omitted). As these criteria are met,

Plaintiff is permitted to challenge the Ordinance as facially violative of the Constitution.

3. Elam's complaint also alleges violation of his civil rights, but the court, by Order dated January 19, 1999, stayed consideration and resolution of all non-First Amendment issues until the constitutional question raised by Plaintiff could be resolved by this court. That order also converted Defendants' Motion to Dismiss to a Motion for Summary Judgment, and all references herein shall be cited to the Briefs in Support of, and in Opposition to, the Summary Judgment Motion, despite the fact that the parties have labeled such filings as briefs relating to the Motion to Dismiss.

Cross–Motions for Summary Judgment on the issue of the constitutionality of the Ordinance.[4] Exercising jurisdiction pursuant to 28 U.S.C. § 1331, the court holds that the Ordinance is facially violative of the United States Constitution and may not be enforced.

## II. Legal Discussion

### (A) Summary Judgment

A party moving for summary judgment will have its motion granted if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. In considering a grant of summary judgment, the court may consider the pleadings, depositions, answers to interrogatories, and admissions on file, as well as any affidavits filed with the court. FED.R.CIV.P. 56(c). The court must view the evidence under consideration in the light most favorable to the non-moving party. *Cuddy v. Wal–Mart Super Ctr., Inc.,* 993 F.Supp. 962, 965 (W.D.Va.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

### (B) Legal Analysis

1. Plaintiff's Standing to Sue and Alleged Mootness of the Controversy

As a preliminary matter, the court must address a challenge to Plaintiff's standing to bring this lawsuit. At oral argument, Defendants claimed that Elam lacked standing to bring this action because he has not alleged that he was engaged in any dancing. However, the Ordinance clearly makes it illegal to "operate" a public dance hall—the very activity Elam proposes, unless one has a license to do so. Town of Pound Ordinance § 128. Thus, this defense is without merit.

Defendants also have contended that the issues raised by Plaintiff are moot because

Elam subsequently reapplied for a permit in December 1998, and such permit was rejected on the basis that his building was not in compliance with portions of the state building code. Belva Bolling, et al. Affidavit at 3–4. Thus, Defendants assert, Plaintiff has no right to challenge the facial invalidity of the Ordinance because his constitutional rights are not affected by the application of the Ordinance. However, this is plainly not the law. *See Dombrowski v. Pfister,* 380 U.S. 479, 486–87, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (noting that an exception to the general rules of standing was created because of the danger in the First Amendment context of tolerating laws susceptible of "sweeping and improper application"). Even if Plaintiff lacks standing to challenge the Ordinance as applied to him,[5] he still may raise a challenge to the Ordinance, contending that, on its face, it violates the First Amendment to the Constitution. *Coates v. City of Cincinnati,* 402 U.S. 611, 616, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Bigelow v. Virginia,* 421 U.S. 809, 815–16, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). The Supreme Court has made it clear that a person's "standing to challenge a statute on First Amendment grounds as facially overbroad does not depend upon whether his own activity is shown to be constitutionally privileged." *Bigelow,* at 815, 95 S.Ct. 2222. This rule applies where a facial challenge is raised to a licensure requirement that may impose a prior restraint upon protected speech. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755–56, 760, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (citations omitted); *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). This exception to the normal rules governing standing to bring an action re-

---

4. At oral argument, Plaintiff made an oral Motion for Summary Judgment. Defendants had previously filed their Motion for Summary Judgment.

5. If, for example, the dancing he sponsored was not protected under the First Amendment, but some of the dancing regulated by the Ordinance received such protection.

flects "the transcendent value to all society of constitutionally protected expression," as well as society's concerns that free speech will be chilled. *Bigelow,* at 816, 95 S.Ct. 2222. Thus, Plaintiff has proper standing to bring and maintain this action before the court.

### 2. First Amendment Protection for Dancing

The court must now determine if the activity regulated by the Ordinance is deserving of First Amendment protection. Not all activity is so deserving, even though "a kernel of expression" is present in almost all activity. *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). If it is not so deserving, then the Ordinance must bear only a rational relationship to some legitimate state purpose in order to pass constitutional scrutiny. *Stanglin,* 490 U.S. at 23, 109 S.Ct. 1591 (citing *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. 1, 44, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). If it is deserving of protection under the First Amendment, then a more heightened form of scrutiny may be applicable. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991).

### a. Nature of the Dancing

Plaintiff has testified that the proposed dancing is "[j]ust like you'd find at any Holiday Inn or any club, nothing special, just people dancing." (Tr. at 5.) Defendants contend that such activity is "recreational dancing" as defined by the Supreme Court in *Stanglin,* and argue that it is unprotected by the First Amendment. Defs.' Mot. for Summ.J. at 2 (citing *Stanglin,* at 25, 109 S.Ct. 1591). Plaintiff contends that the Court in *Stanglin* did not consider the matter of adults' right under the First Amendment to engage in recre-

ational dancing, Pl.'s Resp. to Mot. for Summ.J. at 2 (citing *Stanglin,* at 27 n. 4, 109 S.Ct. 1591), and that *Stanglin* does not stand for the proposition that dance hall patrons enjoy no First Amendment protection. Instead, he argues that *Stanglin* merely reaffirmed that the state possesses greater authority to regulate the activities of children than it does the activities of adults.

Only Elam's statement has been presented to the court as evidence of the type of dancing. No evidence of the type which was produced in *Stanglin,* such as that dealing with the nature of the relationships of the patrons and the like, *Stanglin* at 22, 24–25, 109 S.Ct. 1591, is before the court, and thus this court cannot say whether the type of dancing in the instant case was recreational dancing or not. Counsel at oral argument also was unable to characterize the type of dancing proposed at the Golden Pine. Plaintiff's counsel admitted that he did not know what type of dancing was proposed, but contended that the type of dancing did not matter, and Defendants' attorney merely recited Elam's statement that it was "just ... dancing." Because there is insufficient evidence for the court to characterize the type of dancing at question in the instant case, the court does not decide whether the Ordinance is constitutional as applied to Elam.

In *Stanglin,* the City of Dallas restricted the admission into certain dance halls to those between the ages of 14 and 18 in an effort to provide a place where younger teenagers "would not be subject to the potentially detrimental influences of older teenagers and adults." *Id.* at 21–22, 109 S.Ct. 1591. After examining the *Stanglin* case, this court notes that the issue of an adult's right under the First Amendment to engage in recreational dancing was not squarely before the Court in that case.[6]

---

**6.** *See Stanglin v. City of Dallas,* 744 S.W.2d 165, 168–170 (Tex.App.1987), *rev'd,* 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (discussing minors' rights of association, and not analyzing the associational rights of

adults) and *Stanglin v. Dallas, cert. granted,* 488 U.S. 815, 109 S.Ct. 51, 102 L.Ed.2d 30 (1988) (*certiorari* granted only as to the issue of whether a "municipality unconstitutionally restrict[s] minors' right of association by re-

Nonetheless, the Court addressed the question of First Amendment protection for such dancing rather broadly by stating that "recreational dancing ... is not protected by the First Amendment," no matter the age of the dancers. *Stanglin*, at 25, 109 S.Ct. 1591. After discussing the right of association under the First Amendment in that case, the Supreme Court held that "recreational dancing" where the dancers are primarily strangers to one another and do not "take positions on public questions," or engage in other such activities concerning public debate, is not a type of association deserving of the protections of the First Amendment. *Id.* The Court also held that the City's separation of young teenagers from older teens and young adults in dance halls withstood rational basis scrutiny. *Id.* at 25–26, 109 S.Ct. 1591.

In deciding a case involving adult-oriented nude dancing, the Fourth Circuit has cited the *Stanglin* case for the proposition that recreational dancing is not deserving of First Amendment protection, apparently even when only adults are involved. *D.G. Restaurant Corp. v. City of Myrtle Beach*, 953 F.2d 140, 144 (4th Cir.1991). The Fourth Circuit did not undertake an analysis of any sort to determine whether adults' recreational dancing deserved any First Amendment protections, but merely cited the Supreme Court's holding in *Stanglin*. *Id.* While this court may question the wisdom of concluding that all re-

creational dancing is unprotected by the First Amendment, for the reasons discussed below this court need not rely upon whether or not recreational dancing is, or should be, so protected.[7]

However, some dancing is protected under the First Amendment. The Supreme Court has recognized that "the customary 'barroom' type of nude dancing" involves at least some protected expression, and thus is worthy of constitutional protection in some circumstances. *Barnes*, at 565, 111 S.Ct. 2456 (citations omitted). Some other forms of dance are likewise deserving of First Amendment protection because of the degree of their communicative element. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 933, 95 S.Ct. 2561, 45 L.Ed.2d 648 (certain dancing, even some topless dancing, is of "unquestionable artistic and socially redeeming significance") (citing *Salem Inn, Inc. v. Frank*, 364 F.Supp. 478, 483 (E.D.N.Y.1973)); *San Juan Liquors, Inc. v. Consolidated City of Jacksonville, Fla.*, 480 F.Supp. 151, 153 ("dance can be a method of expression protected by the First Amendment"); *Salem Inn, Inc. v. Frank*, 381 F.Supp. 859, 863 (E.D.N.Y.1974) (not "all dancing is per se a mode of expression protected by the First Amendment ... [, but] ballet and certain ethnic folk dances [do] communicate stories and ideas").[8]

While most dancing restriction cases which the court has reviewed focus on laws relating to nude dancing, the Ordinance

stricting entry to class E dancehalls to persons aged 14 through 18, their parents, and employees of hall?").

7. This court, while fully cognizant of the Supreme Court's admonition that not all expressive conduct is protected speech, *see Stanglin*, 490 U.S. at 25, 109 S.Ct. 1591 (noting that a mere "kernel of expression" in an activity is insufficient to merit First Amendment protection for the activity), is of the view that dancing between adults often has a definite communicative element, such as expression directed to attract a mate in a bar or a discotheque. However, the court is bound by the Fourth Circuit's interpretation of the *Stanglin* case.

8. See also Gretchen Schneider, *Development of Dance, in* Encyclopedia of Southern Culture 1007 (Charles Reagan Wilson et al. eds. 1989) (noting that "the nonverbal language of gestures and attitudes" in ethnic, social, and theatrical dances was "an important aspect of communication" in the growth of Southern towns, such as Pound) and Burt Feintuch, *Square Dancing and Clogging, in* Encyclopedia of Southern Culture 1034 (square dancing "has often provided one of the major settings for community interaction ..., and the dancing itself seems to involve the enactment, at some deep level, of community norms and expectations ...").

does not merely regulate such activity nor does it regulate only "recreational dancing," but by its plain terms restricts all public dancing, whether a square dance, the lambada, pantomime or ballet. *See* Town of Pound Ordinance § 127 (stating the applicability of the ordinance to "dancing," but leaving that term undefined). Given that at least some form of protected expression is regulated by the Ordinance, the court will proceed to determine whether the Ordinance complies with the First Amendment.[9]

The "normal course" for courts considering constitutional challenges to ordinances is to first "ascertain whether a construction of the [ordinance] is fairly possible by which the [constitutional] question may be avoided." *United States v. Grace*, 461 U.S. 171, 175–76, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (citations omitted). Given that the Ordinance plainly covers all public dancing, and as this court has concluded that such a broad, ranging sweep includes some constitutionally protected expressive conduct, the court cannot give the Ordinance a narrowing interpretation which would allow the court to avoid the constitutional question raised by Plaintiff.

### b. Constitutionality of the Ordinance

■ Although the text of the First Amendment reads, in part, "Congress shall make **no law** ... abridging the freedom of speech," U.S. Const. Amend. I [emphasis added],[10] courts have declined to read this language literally. *See Gitlow v.*

*New York*, 268 U.S. 652, 666–67, 45 S.Ct. 625, 69 L.Ed. 1138 (citations omitted) (the First Amendment "does not confer an absolute right to speak or publish, without responsibility, whatever one may choose"). Rather, certain restrictions on speech are permitted. In the context of expressive conduct, which involves a mixture of " 'speech' and 'nonspeech' elements," *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), government regulations are permitted where the four-part test developed by the Supreme Court in *O'Brien* is met. *Id.* at 377, 88 S.Ct. 1673. Specifically,

> a government regulation is sufficiently justified if [1] it is within the constitutional power of the Government; [2] ... it furthers an important or substantial governmental interest; [3] ... the governmental interest is unrelated to the suppression of free expression; and [4] ... the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.*

■ After examining each of these criteria in turn, this court concludes that the Ordinance does not conform to the dictates of *O'Brien*, and, thus, the Ordinance violates the First Amendment's guarantee of freedom of speech. First, Plaintiff does not contend that regulation of dancing is outside the constitutionally permissible range of action which a government may take.[11] Second, an important governmen-

---

9. Just as the Fourth Circuit has recognized that "[e]xpression devoid of 'ideas' but with entertainment value may ... be protected because '[t]he line between the informing and the entertaining is too elusive,' " *IOTA XI Chapter of Sigma Chi Fraternity v. George Mason Univ.*, 993 F.2d 386, 390 (4th Cir.1993) (citing *Winters v. New York*, 333 U.S. 507, 510, 68 S.Ct. 665, 92 L.Ed. 840 (1948)), this court notes that fashioning a bright line rule as to what types of dancing are deserving of First Amendment protection and what types are not so deserving may involve a similarly elusive line. However, that is not a task which this court is called to perform, and the court merely concludes that some types of

dancing regulated under the Ordinance are deserving of First Amendment protection.

10. The First Amendment also is applicable to the states, including Virginia, as well as towns, such as the Town of Pound, located in those states. *See Schneider v. State of New Jersey*, 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

11. Defendants have contended that Plaintiff, in order to challenge the constitutionality of the Ordinance, also must attack the constitutionality of § 18.2–433 of the Code of Virginia (Michie 1996). If this contention was correct,

tal interest is targeted by the Ordinance. The undisputed evidence before the court as to the interest furthered by the Ordinance comes from an affidavit filed by Mayor Belva Bolling and the members of the Pound Town Council, in which they state that "[t]he biggest concern to us regarding a dance hall is and has been the drinking associated with it," and also state their desire for "protections against the problems associated with public dance halls" in general. Bolling, et al. Affid. at 1–2. Courts have often held that the government's interest in preserving social order is a substantial one, *Barnes*, 501 U.S. at 569, 111 S.Ct. 2456 (citations omitted), and Plaintiff does not contest the validity of this interest.

Third, concerns focusing on the consumption of alcohol and other alleged problems at public dance facilities are unrelated to the suppression of free expression. The fatal flaw in the Ordinance stems from the fact that it is not an incidental restriction on First Amendment freedoms, and certainly is not a restriction which is "no greater than is essential" to the Town's professed interest in regulating the consumption of alcohol. Methods which are less intrusive upon First Amendment rights are available to help the Town guard against any concerns it has regarding the secondary effects of public dancing.

Fourth, courts are to safeguard against the chilling effect on First Amendment freedoms which overbroad regulations impose. *See Republican Party of North*

*Carolina v. Martin*, 980 F.2d 943, 960 (4th Cir.), *cert. denied sub nom. Hunt v. Republican Party of North Carolina*, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993) (concluding in that case that no government action threatened to punish any protected speech and, thus, holding that there was no chilling effect to be safeguarded against). Although the Town Council has stated that it enacted the Ordinance because of the drinking of alcohol associated with dances, (Bolling, et al. Affid. at 1), the applicability of the Ordinance is not limited to those places in which alcohol is consumed. For example, a for-profit performance of "The Nutcracker" ballet would require prior approval from the Town Council, even if it were performed in a place that did not commonly serve or sell alcohol, if the for-profit performance were not under the auspices of a charity, or a religious, civic, educational or military group. Thus, it is clear to this court that the Town Council could craft a more narrow ordinance aimed at controlling the perceived evils associated with dancing. Thus, this court must declare the Ordinance to be violative of the First Amendment to the United States Constitution.

### c. Prior Restraint and the Licensure Requirement

The challenged Ordinance contains other constitutional infirmities as well. Supreme Court cases addressing prior restraint of First Amendment protected speech, such

the Attorney General of Virginia would be permitted to intervene as a party in this case. See 28 U.S.C. § 2403(b). However, Defendants are incorrect in asserting that merely because the Ordinance which they have drafted closely parallels a portion of the state statute, that as a result, either both the Ordinance and the statute are constitutional, or both are unconstitutional. Section 18.2–433 of the Code of Virginia is enabling legislation which permits "[t]he governing body of any county, city or town" to "regulate public dance halls in any such county, city or town." It is clear that such language does not give municipalities the power to enact any regula-

tion they might wish, but only reasonable regulations which are constitutional. For example, § 18.2–433 might allow the Town of Pound to enact a content-neutral time, place or manner restriction applying to dance halls—as it may do, under certain conditions, in relation to other forms of First Amendment protected expression, as long as the regulation also conforms to other constitutional dictates. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). Thus, the court concludes that Plaintiff need not challenge the Commonwealth of Virginia's power to enact § 18.2–433.

as the licensure requirements in the Ordinance, "have identified two evils that will not be tolerated in such schemes. First, a scheme that places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225–26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (citations omitted). "Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *Id.* at 226, 110 S.Ct. 596 (citations omitted). Both evils are present in the Ordinance, thus requiring this court to declare it unconstitutional.

■ A law which subjects the exercise of a First Amendment freedom, such as some of the dancing regulated by the Ordinance, "to the prior restraint of a 'licence, without narrow, objective and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 150, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). The law at issue in that case allowed members of the City Commission to refuse to issue a parade permit "whenever they thought 'the public welfare, peace, safety, health, decency, good order, morals or convenience require[d] that it be refused.'" *Id.* at 156, 89 S.Ct. 935. The criteria guiding the Town Council in the instant case are similarly vague and amorphous, focusing as they do upon the "moral character" of the person applying for a license and providing for revocation of a license if "improper conduct" transpires at the location of the dancing. This court cannot determine what "improper conduct" or proper "moral character" is under the Ordinance, and, although counsel for the Defendants has noted that Black's Law Dictionary does offer definitions of some

of these terms, the court concludes that no one can offer constitutionally sufficient "narrow, objective and definite," *Shuttlesworth,* at 150, 89 S.Ct. 935 definitions of those terms.[12] Instead, "men of common intelligence must ... guess at [their] meaning[s]." *Coates,* 402 U.S. at 614, 91 S.Ct. 1686 (citing *Connally v. Gen. Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The use of the vague terms opens the Ordinance up to the possibility of wide-spread abuse, and makes the "peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official." *Id.* at 151, 89 S.Ct. 935 (citation omitted). For example, under the Ordinance, a permit could be revoked by Town Council if a public dancing facility allowed a patron wearing a "Un-elect Town Council" shirt if it decided that the wearing of such a shirt was "improper."

A danger in an overbroad law which addresses protected expression as well as some unprotected expression is its "invitation to discriminatory enforcement." *San Juan Liquors,* 480 F.Supp. at 154 (citing *Coates,* 402 U.S. at 616, 91 S.Ct. 1686). The *San Juan Liquors* court noted that, in that case, the sheriff's department was "charged with the responsibility of drawing the line between constitutionally protected and unprotected activity," and that the "protection of constitutional rights should not be left to the discretion of law enforcement officers, however well-meaning they may be." 480 F.Supp. at 154 (citations omitted). This court agrees and finds that under the Pound Ordinance, the Town Council is charged with such a responsibility and is given sole discretion to draw such a line. Of course, there is nothing impermissible should the Town Council, in its legislative function, choose

---

12. Black's Law Dictionary also defines the term "public interest," Black's Law Dictionary 1393 (4th ed.1968), but the Supreme Court has held that a licensure standard stating that denial of a license be in the "public interest" is an "illusory" standard which

"renders the guarantee against censorship little more than a high-sounding ideal." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 769–70, 108 S.Ct. 2138, 100 L.Ed.2d 771 (citation omitted).

to draft a law which properly and clearly draws a distinction between activity which is protected under our Constitution and activity which receives no such protection, and to then regulate such activities accordingly. However, the failure of the Town Council to do so is the very reason this issue is before the court today.

Under the Ordinance, the Town Council must first pass on the propriety of all dancing, except dancing done under the auspices of an educational, civic, religious or military group, or for charitable purposes, if alcohol is not commonly served or sold at the location where such "excepted dancing" is conducted. While the court will not question the motives of the Council members who enacted this ordinance or those who administer it, the court notes that the Ordinance vests the Pound Town Council with the sole discretion to bar public performances of "The Nutcracker" ballet and to prevent the dancing of the traditional Virginia Reel, if it so desired, merely by declaring that the sponsor of such a dance was an improper person or one who lacked good moral character.

In addition to this constitutional defect, the Ordinance also violates the rule laid down in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), that requires, "by statute or authoritative judicial construction, that the censor [of protected expression] will, within a specified brief period, either issue a license, or go to court to restrain" the protected expression. *Id.* at 58–59, 85 S.Ct. 734. The Ordinance contains no such guarantee, and, in fact, contains no mention of any time line for granting or denying an application for a dance permit. The Ordinance merely provides that a public hearing will be conducted as a part of "the next regularly scheduled Council Meeting," Town of Pound Ordinance § 130, but nothing in the Ordinance requires the Council to vote on the application at that time. In fact, nothing in the Ordinance prevents the Council

from indefinitely tabling an application, thus declining to rule on the application.[13]

d. Establishment Clause Violation

■ Although the issue of whether the Ordinance unconstitutionally treats religious congregations differently was raised at oral argument by counsel for the Plaintiff, the court finds that Plaintiff does not have standing to pursue this claim. The relaxed rules of standing applicable to Plaintiff's other claims are inapplicable to the court's analysis of standing for the purposes of establishment clause matters. Because Elam has not alleged that he suffered an injury by virtue of the Ordinance, the court does not consider this claim.

## III. Conclusion

While the tagline to *Footloose* read: "The music is on his side," [14] in this case the law—specifically the Constitution of the United States, is on the side of the Plaintiff. Accordingly, the court holds that Chapter 22 of the Town of Pound Ordinance, relating to public dance halls, is unconstitutional on its face, and shall not be enforced. Because the court finds that the Ordinance is unconstitutional on its face, the court need not decide whether it is constitutional as applied to this Plaintiff.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

### *ORDER*

For the reasons stated in the Memorandum Opinion entered in this case today, Chapter 22 of the Town of Pound Ordinance is declared to be unconstitutional, as it is facially violative of the First Amendment to the Constitution of the United States. Summary Judgment is thus granted to Plaintiff on the issue of the constitutionality of the Ordinance, and Defendant's Motion for Summary Judgment on that

---

**13.** The Council initially tabled Elam's request. Tr. at 4.

**14.** *Footloose (1984)* (visited May 24, 1999) <http://us.imdb.com/Title?0087277>.

issue is denied. Defendants are thus enjoined from enforcing that portion of the Ordinance.

Counsel shall contact the court immediately with regard to setting a date for trial on the remaining issues in the case and shall also immediately notify the court as to whether discovery has been completed as to the other issues in the case. This case shall remain on the docket of this court.

The Clerk is directed to send certified copies of this Order to all counsel of record.